*Municipal Court of the City of Boston*
No. T-9755
**JOSEPH MILO, ET AL**
v.
**STANDARD ACCIDENT INSURANCE COMPANY**
(October 2—October 21, 1964)

*Present*: Adlow, C. J., Riley & Canavan, JJ.
Case tried to *Lewiton, J.*

*Adlow, C. J.* Action of contract to recover under a contract of insurance for damage caused by the overflow of a swimming pool on the property of the plaintiff.

*There was evidence tending to show that* on October 6, 1962 there was a policy of insurance in existence insuring the home of Joseph Milo (the assured), as well as all outdoor equipment and appurtenances, against "all risks of physical loss" except as expressly excluded therein. The exclusions relied upon by the defendant (the insurer) were expressed as follows:

"This policy does not insure against loss:

(C)    caused by, resulting from, contributed to or aggravated by any of the following:

    (1)    flood, surface water, waves, tidal water or tidal wave, overflow of streams, or other bodies of water or spray from any of the foregoing, all whether driven by wind or not.

    (2)    Water which backs up through sewers or drains.

    (3)    Water below the surface of the ground including that which exerts

pressure on or flows, seeps, or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors."

The swimming pool to which the damage can be traced was 20 x 40 feet in dimension. It was equipped with a multi-purpose pump for purposes of drainage and circulation. The edge of the pool consisted of a raised coping of patio blocks on all sides which caused surface waters to drain away from the pool. Between the rear foundation of the assured's house and the pool was a patio which was 10 feet wide and 40 feet long. This area was so graded that water would drain from the center toward each side of the house.

About dusk on October 5, 1962 the water level in the pool was about 5 inches below the top of the coping. It was raining at the time. By 7:00 A.M. on October 6th it was still raining, and the water in the pool was then about 1" below the top of the coping. After the pump was started it was found that the multi-port valve was stuck fast in the circulating position and the pool could not be pumped down. The capacity of the pump was 2100 gallons per hour. For each rise of 1" in the pool level, 480 gallons of water would be required. According to weather bureau records, about 7 or 8 inches of rain

fell during a 24-hour period, on October 5-6, 1962. The pool began overflowing about 10:30 A.M. on October 6th. After the pool ,started to overflow, water entered the window wells, leaked into the basement of the house, causing damage to the walls and floor and eventually damaged the base and sides of the pool.

On these facts the assured requested the court to rule that the damage was embraced by the policy of insurance and did not come within the scope of the excluded risks. To the refusal of the court to so rule the assured brings this report.

We see no error in the court's ruling. Granted that the breakdown of the discharge pump was a factor contributing to the damage, it was not an active factor. In fact it had ceased to function and resulted only in the existence of a condition which if unattended by other events, would have caused no damage. The court's finding that "the plaintiff's loss was caused, in part, by surface water resulting from sustained torrential rainfall, and that such surface water contributed substantially to the loss" was clearly supported by the evidence.

The respective rights of the parties are governed by their agreement, and the exclusions specified in the agreement clearly embrace the conditions under which the assured suffered his loss. Counsel for the assured has urged that the burden of proving that the cause of the damage is within the

exclusionary clauses of the policy and was upon the insurer. Granted that it is, can there be any doubt that on the reported evidence there was ample ground to sustain the court's finding that "the plaintiff's loss was caused, in part, by surface water resulting from sustained torrential rainfall, and that such surface water contributed substantially to the loss." We must constantly keep in mind that the cause of damage embraced by the exclusionary clause must not be the sole cause of the damage, but such damage as is "caused by, resulted from, contributed to or aggravated" by the alleged conditions.

Can there be any doubt that the flood resulting from the overflowing of the swimming pool either caused, or resulted in, or contributed to, or aggravated the damage to the assured's house? In the absence of an arbitrary rule of law in this jurisdiction which would require any other conclusion, the court, in ruling as it did, conferred on the words in the exclusionary clause their natural meaning. Considering the manner in which the loss in issue occurred, it was expressly exempted from the benefits of this contract by the exclusionary provisions contained therein. *Report dismissed.*

Francis C. Reynolds, of Boston, for the Plaintiff.
William S. Pidgeon, of Boston, for the Defendant.